OPINION
Appellee Mary Jane Volz initiated the instant divorce action against her spouse, appellee, Steven W. Volz. The Richland County Common Pleas Court sustained a joint motion making appellant Police and Firemen's Disability and Pension Fund of Ohio (PFDPF) a party to the divorce proceedings. On January 1, 1972, appellee Steven Volz began working as a firefighter for the City of Mansfield. As a firefighter, he participated in PFDPF. On the date of the termination of the marriage, May 6, 1998, appellee had 26.42 years of participation in and contribution to PFDPF. At the time of the divorce, appellee was 47 years old, with a history of heart problems. However, he continued in his employment with the City of Mansfield. As of the date of the termination of the marriage, the present value of appellee's pension was $390,213. In an attempt to equitably divide the pension plan, the court issued a Qualified Domestic Relations Order (QDRO). In the QDRO, the court identified appellee Mary Jane Volz as alternate payee of her ex-husband's benefits. The order directed the fund to pay one-half of the benefits to Mr. Volz, which had accrued during the course of the marriage. The court order set forth a formula which the fund was to be used to calculate Mrs. Volz's payments. The formula provided for payments as follows: The numerator shall be the total number of years that Participant participated in the Plan during coverture (i.e. 26.42 years) and the denominator shall be the total number of years that Participant participated in the Plan at the time of his retirement, separation or disability times fifty percent (50%) times Defendant's total monthly benefit:
 (26.42 Years) (Total Years in Plan) X 50% X Monthly Benefit = Plaintiff's Award. In addition to the above the Alternate Payee shall receive a pro-rata share of any post-retirement cost of living adjustments or other economic improvements made to the Participant's benefit on or after the date of his retirement.
The order further mandated that the calculated portion of Mrs. Volz's interest be held by PFDPF in a segregated fund, titled to and controlled by her. Further, the order required that the Fund pay Mrs. Volz her share directly. Appellant assigns one error on appeal:
ASSIGNMENT OF ERROR
 I. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT ISSUED A QUALIFIED DOMESTIC RELATIONS ORDER THAT REQUIRED THE POLICE AND FIREMEN'S DISABILITY AND PENSION FUND TO RECOGNIZE, HONOR, AND SEGREGATE A NON-MEMBER'S INTEREST IN A FUND MEMBER'S PENSION ACCOUNT, TO CALCULATE A NON-MEMBER'S INTEREST IN HER FORMER SPOUSE'S ACCOUNT, AND TO ISSUE DISABILITY AND PENSION BENEFITS DIRECTLY TO A NON-MEMBER.
In Erb v. Erb (1996), 75 Ohio St.3d 18, the Ohio Supreme Court considered the issue of whether a court may order, as part of a marital property award in a divorce action, the PFDPF to pay pension benefits to a non-employee spouse prior to the participant's retirement. The court noted that as a creature of statute, the PFDPF has no authority beyond that which is expressly or impliedly conferred by statute. Id. at 22. The court found that pursuant to statute, the court's order requiring the Fund to immediately distribute to the non-employee's spouse her interest in her husband's retirement fund violated the terms of the Plan. Id. Although in Erb, the court did not consider the issue of whether a QDRO could be imposed on a pension plan, we find that the QDRO violates R.C. 742.47, and therefore is contrary to law. R.C. 742.47 provides: Except as provided in sections 742.461,3111.23, and 3113.21 of the Revised Code, sums of money due or to become due to any person from the police and firemen's disability and pension fund are not liable to attachment, garnishment, levy, or seizure under any legal or equitable process, whether such sums remain with the treasurer of the fund or any officer or agent of the board of trustees of the fund, or is in the course of transmission to the person entitled thereto, but shall inure wholly to the benefit of such person.
The only persons to whom sums of money can be due from the Fund are those individuals who qualify as members of the Fund. R.C.742.37 (C); 742.01 (E). While Mary Jane Volz has an interest in sums potentially due Steven Volz to the extent that they constitute marital property, she is statutorily precluded from receiving her interest in her husband's benefits directly from the Fund. Further, with exceptions not applicable here, concerning theft in office and support orders, sums of money that may become due to Mr. Volz are not subject to attachment, garnishment, levee, or seizure under equitable or legal process. Therefore, under the statute, the sums of money representing Mr. Volz's pension benefits are, at least initially, due to him. In the instant case, the court's order transfers a portion of that money directly to Mrs. Volz, as an equal participant in the plan. To that extent, the court's order precludes the money from inuring wholly to the member's benefit, as required by statute, and effectively operates as an attachment or seizure of money due to the member. Davis v. Davis (December 7, 1998), Montgomery App. No. 17124, unreported. This court has previously held that public pension plans are not subject to QDRO. Zettler v. Zettler (February 6, 1995), Stark App. No. 1994CA00194, unreported; Corbett v. Corbett (June 1, 1999), Coshocton App. No. 98-CA-16, unreported. In addition, courts across the state have similarly held that state pension funds are not subject to Qualified Domestic Relations Orders. E.g. Ricketts v. Ricketts (1996), 109 Ohio App.3d 746; Sprankle v. Sprankle (1993), 87 Ohio App.3d 129; Graham v. Graham (September 7, 1993), Greene App. No. 92CA-4, unreported. In addition, the order requires appellant to create and maintain a separate account in the name of Mrs. Volz, who is not a member of the plan. The trial court erred in imposing a Qualified Domestic Relations Order on the pension plan in the instant case. Prohibitions preventing the use of Qualified Domestic Relations Orders for public pension plans create significant problems for courts and for the parties. Frequently, if not in every case, the public pension plan is the largest asset in the estate. Equal or equitable divisions of assets are severely impacted by the failure of courts to divide and direct distribution of pension assets presently held. The legislature, by enacting laws that prohibit QDRO for public pensions, unnecessarily creates two distinct classes: one for private pensions and one for public pensions. Numerous scenarios exist where persons entitled to share in public pension funds are injured by this legislation. If the justification for such restrictions is only to minimize the responsibility of the State in accounting for and administering court orders related to said funds, then in this court's opinion the ability to fairly and equitably divide and encumber pension assets for the benefit of the parties far outweighs the inconveniences. The assignment of error is sustained.
The judgment of the Richland County Common Pleas Court is reversed. This case is remanded to that court for redistribution of marital property.
By Gwin, J., Wise, P.J., and Edwards, J., concur